IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DO NOT PASS GO, LLC; NEXT STEP RECOVERY HOMES, INC; KENNETH D. SIMS, and JASON RIDLEY, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ROCKFORD,<br><br>Defendant. | No. 24-cv-1349<br><br>Hon.<br><br>Magistrate Judge |

## COMPLAINT

Plaintiffs, Do Not Pass Go, LLC, Next Step Recovery Homes, Inc., Kenneth D. Sims and Jason Ridley, through counsel, complain against Defendant City of Rockford, as follows:

### Nature of the Case

1. This case arises under 42 U.S.C. §1983 and challenges the constitutionality of a zoning ordinance enacted in December 2023 by the City of Rockford, Illinois. In particular, Plaintiffs challenge §90-002-A(6) of the City of Rockford's Zoning Ordinance ("the Ordinance"), which defines a "Group Home for Adjustment" as follows:

> A residence for two or more individuals under supervision while on probation, pre-release, parole, mandatory supervised release, or work release, to mainstream residents back into society enabling them to live independently. For purposes of this subsection 6, any property with multi-unit dwellings shall be considered one residence.

The relevant excerpt of the Zoning Ordinance is attached hereto as Exhibit 1.

2. Under Rockford's Zoning Code, landlords are prohibited from leasing residential property to more than one individual under supervision while on probation, pre-release, parole, mandatory supervised release, or work release unless the landlord first obtains a "special use permit" to operate a "Group Home for Adjustment." The City prohibits the granting of special use permits for the operation of a "group home for adjustment" for any property zoned as "R-1" (single family dwellings) or "R-2" (two-family dwellings). Ex. 1 at 2. In effect, this prohibits individuals on probation, pre-release, parole, mandatory supervised release, or work release from residing at the same address as one another in any area in Rockford that is zoned for single family or two-family homes, even if they are residing in separate units in the same building.

3. The Ordinance has the effect of putting affordable housing in the City off limits to persons on supervised release.

4. Pursuant to the Ordinance, at least 41 persons currently residing in the City of Rockford are at immediate risk of being kicked out of their homes.[1] The City has begun enforcement of the Ordinance and several individuals are being instructed that they must leave their homes by Friday, February 16, 2024.

5. Plaintiffs allege the Ordinance violates the Fourteenth Amendment of the United States Constitution, both on its face and as applied, and seek injunctive

---

[1] Counsel is aware of 41 individuals whom Rockford believes to be residing in locations that violate the Ordinance based on enforcement letters Rockford sent to landlords in January 2024.

relief to prohibit enforcement of the Ordinance. Plaintiffs also seek nominal and compensatory damages for the injuries associated with the deprivation of their constitutional rights.

## Jurisdiction and Venue

6. Jurisdiction for Plaintiffs' claims is based on 28 U.S.C. §§1331 and 1343(a).

7. Venue is proper in this court pursuant to 28 U.S.C. §1391(b), in that the events giving rise to the Plaintiffs' claims arose in this district.

## The Parties

8. Defendant City of Rockford is a municipal corporation located in Winnebago County, Illinois. Defendant is governed by an elected City Council, which, among other things, is empowered to enact zoning ordinances.

9. Plaintiffs Do Not Pass Go, LLC and Next Step Recovery Homes, Inc. ("the Corporate Plaintiffs") are corporate entities that own residential properties in Rockford that provide housing to individuals on mandatory supervised release from the Illinois Department of Corrections ("IDOC").

10. Plaintiffs Kenneth D. Sims and Jason Ridley are residents of Rockford, Illinois ("the Resident Plaintiffs"). They are on mandatory supervised release and live in residential properties owned by the corporate plaintiffs and are thus subject to the restrictions under the Ordinance. Each seeks to continue to live in Rockford, but is unable to do so due to the Ordinance.

## The Challenged Ordinance

11. Prior to amendment of the Ordinance on December 4, 2023, the Zoning Code of the City of Rockford defined a "group home for adjustment" as a "residence for those under court supervision while on probation, pre-release, or work release wherein supervision, rehabilitation and counseling are provided to mainstream residents back into society enabling them to live independently." Rockford Code of Ordinances §90-002-A(6) (effective 3/31/23).

12. On December 4, 2023, the City Council approved an amendment to the Zoning Code to give the term "group home for adjustment" a broader definition. The amended code made two significant changes: (1) it added individuals on "parole [and] mandatory supervised release" to the list of individuals to whom the "group home for adjustment" definition applies, and (2) deleted the requirement that the housing provide any "supervision, rehabilitation or counseling." As a result, the definition of "group home for adjustment" now encompasses any residential property at which more than one individual on MSR resides, even if the residents are tenants with leases and the landlord does not provide any services or supervision on site.

13. According to an enforcement letter from the City's Legal Director Nicholas Meyer, the City's new definition of "group home for adjustment" encompasses "any residence that houses two or more individuals on parole or supervised release." Exhibit 2.

14. According to this enforcement letter, a property owner may only operate a "group home for adjustment" in the City of Rockford with a "special use permit." Ex. 2. However, establishment of a "group home for adjustment" is categorically prohibited "in an R-1 or R-2 Residential Zoning District." *Id.*

15. The Rockford Planning and Zoning Committee Report from the November 21, 2023, meeting at which the amendment was discussed indicates that the Ordinance was amended in response to a perceived "influx of sex offender parolees" being released from IDOC to Rockford to reside in "multi-unit properties." Exhibit 3, Meeting Minutes.

16. In his testimony before the Committee, Mr. Meyer stated that the amendment to the code was in response to "a number of individuals [having] been released to the Rockford area from prison on mandatory supervised release" many of whom "are from outside of Winnebago County." Exhibit 4, Committee Report of Nov. 27, 2023 Meeting.

17. Nothing in the legislative history for the Ordinance amendment indicates that there were problems or negative affects arising from the co-habitation of individuals on MSR in Rockford.

## Facts Relevant to the Corporate Plaintiffs

**Do Not Pass Go LLC**

18. Corporate Plaintiff Do Not Pass Go, LLC ("DNPG") is a property management company with locations in Rockford and Dixon, Illinois. DNPG has been operating in the City of Rockford since 2020.

19. DNPG owns two residences in Rockford which it rents to individuals on MSR. One of the residences, located at 326 Avon Ave., is a two-unit building (often referred to as a two-flat or duplex). Two individuals on MSR reside in each unit. The other residence is located at 2013 School Street, and three individuals on MSR reside there. Both residences are in "R-1" zoning districts.

20. DNPG does not provide counseling, supervision or other services to its tenants at either property. The tenants have standard leases and pay monthly rent.

21. On January 2, 2024, the City of Rockford sent a letter to DNPG stating that both of DNPG's properties are classified as a "group home for adjustment" under the amended zoning ordinance. Exhibit 2. The letter further states that "both properties are in violation of City of Rockford zoning ordinances because they are in an R-1 zoning district." *Id*. The letter states that "only one sex offender parolee may reside at each residence," even if in separate units in the same building. *Id*. The letter further states that DNPG will be ticketed $750 per day, per property for failing to comply with the zoning code. *Id*.

22. The Ordinance is causing direct and immediate harm to DNPG. DNPG must either evict five of its current eight tenants, excluding one tenant who is not on MSR and thus not subject to the Ordinance, or pay penalties for violation of the challenged Ordinance.

23. If DNPG cannot house more than one person on MSR in its properties, its mission to provide affordable rental housing to persons on MSR will be frustrated. It is not economically feasible to have only one tenant in each of its two properties.

**Next Step Recovery Homes Inc.**

24. Corporate Plaintiff Next Step Recovery Homes, Inc. owns six residences in the City of Rockford. The buildings are located at 1201 Cunningham Street; 2319 N. Green Street; 326 Irving Avenue; 1441 Andrews Street; 423 N. Central Street; and 4309 School Street. All of these residences house individuals who are on MSR, and four of the six house more than one person on MSR. There are six individuals on MSR residing at 1201 Cunningham Street; two at 326 Irving Avenue; five at 1441 Andrews Street; and three at 4309 School Street.

25. All of Next Step Recovery Homes' properties in Rockford are part of the "Intensive Community Reintegration Program" ("ICRP")—a housing program for individuals on MSR with sex offense convictions that is subsidized by the Illinois Department of Corrections. The IDOC pays a per-person, per-day rate to contractors such as Next Step Recovery Homes who provide housing to individuals on MSR who participate in the ICRP.[2]

26. In January 2024, the City of Rockford sent Next Step Recovery Homes a letter stating that all of its properties are classified as a "group home for adjustment" under the amended zoning ordinance. The letter further states that the properties located at 1441 Andrews Street; 1201 Cunningham Street and 326 Irving

---

[2] The ICRP was created by the IDOC in 2020 in response to an injunction imposed by Judge Virginia Kendall in *Murphy v. Raoul*, 16-cv-11471 (N.D. Ill.), in which plaintiffs challenged the constitutionality of the IDOC's policy of keeping individuals with convictions for sexual offenses in prison beyond the time they were sentenced to serve if they could not afford to obtain housing at which to reside while on MSR. The ICRP provides housing for parolees of limited means in cities throughout Illinois and now consists of 398 beds. *See Stone v. Jeffreys,* 21-cv- 5616, ECF No. 129, Status Report (Feb. 5, 2024).

7

Avenue are ineligible for a "special use permit" because they are located in R-1 zoning districts.

27. The letter states that "only one sex offender parolee may reside at each residence," even if in separate units in the same building. The letter further states that Next Step Recovery Homes will be ticketed $750 per day, per property for failing to comply with the zoning code.

28. In response to the City's enforcement letter, the IDOC has stopped placing individuals in Next Step Recovery properties in Rockford and has informed at least two current residents that they must move out of Next Step Recovery properties by February 16, 2024.

29. The Ordinance is causing direct and immediate harm to Next Step Recovery. It is losing revenue that it requires to continue its operations because the IDOC has stopped placing individuals on MSR at its properties in Rockford. In addition, it must either evict its current tenants or pay penalties for violation of the challenged Ordinance. The Ordinance will permanently prohibit Next Step Recovery from housing more than one person on MSR at four of its six properties because the properties are zoned as R-1 and therefore are not eligible for a special use permit. It is not economically feasible for Next Step Recovery to continue its operations in Rockford if it can house only one person on MSR at each building.

## Facts Relevant to the Resident Plaintiffs

**Kenneth D. Sims**

30. Plaintiff Kenneth D. Sims is a 39-year-old resident of Rockford, Illinois, who is on MSR. He was released from prison in September 2023 and currently resides at 1439 Andrews Street, a property operated by Next Step Recovery Homes Inc. He is a participant in the ICRP.

31. Plaintiff Sims cannot afford his own housing at this time. He was only able to get out of prison because of the ICRP.

32. On Saturday, February 10, 2024, the IDOC informed Plaintiff Sims that, due to the restrictions imposed by the Ordinance, he must move from his residence in Rockford to Chicago. The IDOC has informed him that he must move by Friday, February 16, 2024.

33. Plaintiff Sims seeks to continue to live at his current address in Rockford but due to the Ordinance he cannot. Plaintiff Sims does not want to live in Chicago and worries that if he refuses to move to Chicago he will be forced to return to prison due to not having an approved host site.

34. Since he was told he has to move, Plaintiff Sims has been seeking to find alternative places to live throughout Rockford, but he has been unable to find an alternative address.

**Jason Ridley**

35. Plaintiff Jason Ridley is a 64-year-old resident of Rockford, Illinois who is on MSR. He was released from prison in September 2021 and is currently residing at 326 Avon Avenue, a property operated by Do Not Pass Go LLC.

36. Plaintiff Ridley has resided at this location since the end of September 2022. He pays $550 per month in rent and lives in unit 1 of the residence with another individual on MSR. He works full time at Hormel Food in Rochelle, Illinois.

37. Based on his current income, Plaintiff Ridley cannot afford his own apartment. Sharing living expenses with two other people enables him to maintain a residence and save money towards his own home.

38. Plaintiff Ridley seeks to continue to live at his current address in Rockford but, due to the Ordinance, he is afraid he will have to move because only one person on MSR can continue to live there. Plaintiff Ridley worries that if he is forced to move from his present residence, he will be homeless and/or forced to return to prison.

39. Since he was told he has to move, Plaintiff Ridley has been seeking to find alternative places to live in Rockford, but he has been unable to find alternative housing that he can afford and that complies with the restrictions imposed on persons with convictions for sexual offenses.

**Restrictions that Apply to Individuals on MSR**

40. Individuals with convictions for sexual offenses are subject to a host of restrictions while on Mandatory Supervised Release.

41. With regard to where such individuals may reside, any individual classified as a "child sex offender" is prohibited from living within 500 feet of a school, playground, or daycare. 720 ILCS 5/11-9.3 (b-5), (b-10). And any individual convicted of a sexual offense must reside only at a location approved by the IDOC while on MSR. 730 ILCS 5/3-3-7(b-1)(1). IDOC imposes restrictions on where such individuals may reside, which include a prohibition on residing in a host site where children visit or reside, and may include prohibitions on residing at a location where there is internet access.

42. Individuals on MSR for sexual offenses are mandated to wear GPS ankle monitors (730 ILCS 5/3-3-7 (a)(7.7); (17)); must participate in sex offender therapy and take polygraph examinations (730 ILCS 5/3-3-7 (a)(7.5), (b-1)(16)); may have their internet use restricted and/or monitored (730 ILCS 5/3-3-7 (b)(7.6)–(7.9); (7.11), (7.12)); may not accept employment, enroll in school, or change their addresses without the approval of a parole agent (730 ILCS 5/3-3-7 (a)(9); (b-1)(4)); are subject to random searches of their persons, property, and residences (730 ILCS 5/3-3-7 (a)(10)); may not visit another private residence without approval of a parole agent (730 ILCS 5/3-3-7(b-1)(7)); and may not leave the state without advance permission (730 ILCS 5/3-3-7 (a)(9)).

43. Individuals on MSR are regularly visited by agents of the IDOC who monitor their compliance with conditions of MSR and the law.

## There Is No Evidence that Individuals on MSR Residing at the Same Address As One Another Harms Public Safety

44. There is no evidence that allowing people on MSR to live in the same building as one another contributes to criminality. At least one analysis found that it has the opposite effect: it reduces the incidence of re-offense and improves supervision.

45. A Minnesota Department of Corrections report to the Minnesota legislature concerning residential placement of individuals who have been convicted of sex offenses studied the "effects of having the offenders live in close proximity to one another" and concluded as follows:

> This examination of level three re-offenders does not reveal a negative effect related to a level three offender living with another sex offender. In fact, supervision agents … have noted benefits from having more than one level three offender living in one location. Closer supervision is possible because travel time between offenders is reduced. Also, level three offenders who live with other level three offenders experience more visits from a supervising agent because agents for both offenders visit the same property. Finally, offenders tend to inform on each other when supervision restrictions are violated or crimes are committed.

Minnesota Department of Corrections, Level Three Sex Offender Residential Placement Issues at 4, 8 (available at: https://mn.gov/doc/assets/Lvl%203%20SEX%20OFFENDERS%20report%202003%20(revised%202-04)_tcm1089-272828.pdf) (last visited February 14, 2024).

46. Similarly, Bob McKelvey, the general manager of NewDay Apartments, which houses registrants in communities throughout northern Illinois, testified that in his experience "housing registrants at the same address allows for more effective (and cost-effective) law enforcement oversight" and "also allows registrants to police

one another and share resources to better support themselves, which ultimately helps them focus on the future and reduces recidivism." *Barnes v. Jeffreys*, 20-cv-2137, ECF No. 33, ¶7 (N.D. Ill.)

47. Indeed, in a previous class action suit in which a group of individuals challenged the constitutionality of 730 ILCS 5/3-3-7(a)(7.6), a section of the Illinois Code of Corrections that prohibited individuals on MSR with sex offense convictions from living "at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex" with another person required to register as a sex offender, the IDOC did not come forth with any evidence that the statute served any rehabilitative, crime prevention, or public safety goal. The court granted Plaintiffs a preliminary injunction in that case and noted that "[i]n response to the question about what penological or rehabilitative support the Defendants have for the 'One Person One Address' provision, Defendants were unable to give any." *Barnes v. Jeffreys*, 20-cv-2137, ECF No. 11 (N.D. Ill.). Ultimately, the *Barnes* court concluded that the evidence in the record supported the conclusion that "permitting registrants to live together reduces recidivism and improves supervision." *Barnes*, 529 F. Supp. 3d 784, 798 (N.D. Ill. 2021).

48. Today, the Illinois Department of Corrections houses nearly 400 people on MSR with sex offense convictions in shared living environments in the ICRP throughout the state. *See Stone v. Jeffreys*, 21-cv-5616, ECF No. 129, Status Report (Feb. 5, 2024) (ICRP has 398 beds ). This reflects a conclusion by the IDOC that it

13

does not harm rehabilitation or public safety to house more than one person on MSR at the same address.

49. Likewise, in the case *Potkaj et al. v. Watkins, et al.*, 22-cv-7176 (N.D. Ill.), the district court enjoined the enforcement of 730 ILCS 5/5-6-3, a section of the Illinois Code of Corrections that prohibited individuals on probation for sexual offenses from residing at the same address as another individual required to register as a sex offender. The court noted that "no penological or other interest is advanced by the State … to support the One-Per-Address statute as applied to probationers." *Potkaj*, 22-cv-7176, ECF 35, February 15, 2023. Pursuant to this injunction, persons on probation are also permitted to live in the same building or dwelling unit as one another.

**Class Allegations**

50. Pursuant to Fed. R. Civ. P. 23(b)(2), Resident Plaintiffs Ridley and Sims seek certification of this complaint as a class action for purposes of equitable relief on behalf of a class defined as follows.

> All individuals currently or in the future on Mandatory Supervised Release who reside or seek to reside in the City of Rockford, Illinois.

51. The class seeks a declaration that the Ordinance is unconstitutional and an injunction prohibiting continued enforcement of it.

52. The proposed class is numerous. It includes at least 41 persons who are presently residing in Rockford whose current housing is imperiled by enforcement of the Ordinance, but also as yet unknown future members of the proposed class—*i.e.*, individuals released on MSR in the future who seek to reside in Rockford.

53. There are questions of law and fact common to all class members, including but not limited to the following:

- Whether prohibiting persons on MSR from residing at the same address as one another serves any legitimate government interests;

- What are the City of Rockford's rationales for the Ordinance;

- Whether the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment.

54. All individuals falling within the class definition are subject to the same ordinance. Given the commonality of the questions pertinent to all class members, a single injunction would provide relief to each member of the class.

55. Defendant City of Rockford has acted and continues to act in a manner adverse to the rights of the proposed class, making final injunctive and declaratory relief appropriate with respect to the class as a whole.

56. The named Plaintiffs will fairly and adequately represent the interests of the class; and the named Plaintiffs' claims are typical of the claims of all members of the proposed class.

57. Plaintiffs' counsel has extensive experience and has devoted substantial professional and financial resources to representing individuals on MSR in Illinois, including numerous class action cases regarding housing for persons on MSR. *See, e.g., Murphy v. Raoul*, 16-cv-11471 (N.D. Ill.) (class action challenge to housing policies resulting in prolonged imprisonment of individuals on MSR); *Stone v. Jeffreys*, 21-cv- 5616 (N.D. Ill.) (same); *Barnes v. Jeffreys*, 21-cv-2137 (N.D. Ill.) (challenge to One-Per-Address Statute applied to persons on MSR); *Potkaj v.*

15

*Watkins*, 22-cv-7176 (N.D. Ill) (challenge to One-Per-Address Statute applied to persons on probation). Plaintiffs' counsel will fairly and adequately represent the interests of the class.

**COUNT I**
**FOURTEENTH AMENDMENT**

58. The Ordinance violates the Fourteenth Amendment's Equal Protection Clause in at least two respects.

59. First, the Ordinance does not serve a rational government interest and is motivated by irrational prejudice and desire to harm a politically unpopular group—*i.e.*, persons under court supervision. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).

60. Second, by prohibiting individuals on MSR from living at the same address as one another, the Ordinance puts affordable housing off limits to persons of limited means resulting in their prolonged imprisonment due to their inability to afford housing. *See Barnes v. Jeffreys*, 529 F. Supp. 3d 784 (N.D. Ill. 2021).

WHEREFORE, Plaintiffs request that this Court:

- A. Enter a declaration that the Ordinance violates the Fourteenth Amendment to the U.S. Constitution on its face and as applied;

- B. Enter a preliminary and then a permanent injunction barring Defendant City of Rockford and its agents, servants, employees and attorneys from enforcing the Ordinance against Plaintiffs;

- C. Award Plaintiffs nominal and compensatory damages;

- D. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988, and other applicable law; and

E. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Mark G. Weinberg
/s/Adele D. Nicholas
*Counsel for Plaintiffs*

Mark G. Weinberg
Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net

Adele D. Nicholas
Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com